IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN PATRICK FLOOD,
       Plaintiff,
     v.
TROOPER CHARLES SCHAEFER,
et al.,
       Defendants

Case No. 3:06-cv-82-KRG-KAP

Report and Recommendation

Recommendation

Pending is defendants' motion to dismiss, docket no. 70. I recommend that it be granted and the remaining claims dismissed.

Report

The surviving counts of plaintiff's complaint as amended, see docket no. 54 (recounting the procedural history of this matter), allege that the defendants, who are employees of the Pennsylvania State Police[1], violated the Fourth Amendment by the allegedly inhumane way they treated plaintiff during his custodial interrogation after his arrest on April 11, 2004, and by the destruction of his property when the defendants executed a search warrant at his residence on the same date. Defendants move to dismiss, docket no. 70, asserting that the findings by Judge Gibson

---

1. Defendant Keith Brubaker is a private citizen alleged to have been working as the agent of the trooper defendants in pushing narcotics on plaintiff so that the defendants collectively could frame plaintiff by planting bales of marijuana in plaintiff's residence. A private citizen who conspires with government officials acting under color of law can be considered acting under color of law. However, as recounted in docket no. 54, the claims against Brubaker would invalidate plaintiff's conviction and must await the reversal of plaintiff's criminal conviction before they can be brought. Only the trooper defendants are involved in the remaining claims.

on April 26, 2006, after the suppression hearing in the federal criminal prosecution against plaintiff, see docket no. 149 in United States v. Flood, 3:04-cr-36-KRG-1 (W.D.Pa.), preclude plaintiff from making either claim. Plaintiff's response to defendants' motion, docket no. 77, attempts to bring up the previously dismissed claims that defendants directed Keith Brubaker to push narcotics on plaintiff and that the defendants together with plaintiff's defense counsel and the prosecutor in the criminal case tampered with evidence presented to the jury. Those other claims are not properly before this court and will not be unless the Court of Appeals for the Third Circuit reverses his conviction, and need not be addressed again here.

I

To state a claim in Count V, plaintiff Flood must allege a plausible claim that defendant Snyder used unreasonable force against him on April 11, 2004. Plaintiff's claims in Count VI against the other trooper defendants for not intervening are obviously derivative ones which fail if there was no unreasonable use of force by Snyder. The sources of law for claims arising from the use of force by law enforcement personnel against a person before his conviction are the Fourth Amendment and Fourteenth Amendment; after conviction, claims arise under the Eighth Amendment. Regardless of the varying constitutional sources and factual settings there is a generally applicable standard for a law

enforcement officer's use of force in placing or holding someone in custody, namely "whether [the officer's] actions were reasonable." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1778 (2007)(reversing denial of summary judgment for sheriff's deputy who was alleged to have violated the Fourth Amendment when he deliberately rammed the fleeing suspect's car to end a high speed chase); Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.2004)(reversing summary judgment for officer who placed excessively tight handcuffs on an arrestee and without reason refused to loosen them despite indications from arrestee that he was in pain).

A second principle important to the distinction between constitutional claims and common law tort claims when force is used against someone in custody was recognized in the apt expression by Judge Henry Friendly of the Second Circuit Court of Appeals that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). The Supreme Court to some extent adopted Judge Friendly's aphorism for persons in custody after conviction in Hudson v. McMillian, 503 U.S. 1 (1992), which held that unnecessary uses of force which cause minor injury are actionable as violations of the Eighth Amendment, but that even unnecessary uses of force which cause de minimis or no injury are not actionable. The Third Circuit, in considering Eighth Amendment

claims, focuses on the question whether the use of force was excessive rather than whether the injury was greater than <u>de minimis</u>, see <u>Smith v. Mensinger</u>, 293 F.3d 641, 648-49 (3d Cir.2002), but the inter-relatedness of the use of force and severity of injury inquiries is obvious because:

> There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically.

<u>Reyes v. Chinnici</u>, 54 Fed.Appx. 44, 48 (3d Cir.2002)(affirming summary judgment in favor of a corrections officer who a jury could have found to have punched a handcuffed prisoner.) The Third Circuit recognizes this same relation between force and injury in the reasonableness inquiry under the Fourth Amendment. Affirming summary judgment in favor of defendants on plaintiff's Fourth Amendment claim in <u>Burr v. Hasbrouck Heights Police Dept.</u> 131 Fed.Appx. 799, 803 (3d Cir.2005) that police officers who arrested her used unreasonable force, the court observed:

> [E]ven viewing the facts and reasonable inferences therefrom in Burr's favor, it is fair to say that the Officers observed her running towards the door, and then, to prevent her from fleeing, grabbed her arms and put her on a stretcher. Id. As a result, her arms received some "small bruises." These facts do not suggest that the amount of force used was objectively unreasonable. Accordingly, [defendant officers] did not violate Burr's rights by forcibly restraining her.

Likewise, in <u>James v. York County Police Dept.</u>, 160 Fed.Appx. 126, 134 (3d Cir.2005), the appellate court noted that summary judgment

was proper in a Fourth Amendment claim because a lack of injury contradicted a claim of excessive force:

> [t]he District Court also properly held that [the defendant officer] did not use an unreasonable amount of force, despite hitting [the plaintiff] James with the side of a van. The parties dispute whether the van was moving at the time of impact, but, for our purposes, we assume, as James testified at his deposition, that the van was moving at a nominal speed. [] Although James claimed physical injuries, he was able to stand up immediately after he was hit. [] Under the circumstances, [defendant] in slowly moving the van to block James' escape, did not use unreasonable force. (references to record deleted)

Considered in light of established circuit precedent, plaintiff's allegations are inadequate to state a claim in Count V; Count VI therefore fails as well. Flood uses the phrases "malicious and sadistic" and "excessive force" to characterize defendants' actions but (setting aside the claim that "the narcotics were used with excessive force," docket no. 77 at 2, because that claim cannot be brought unless and until the Court of Appeals reverses plaintiff's conviction) alleges as fact only that he went without food and was handcuffed to a chair for approximately ten to twelve hours, except for two bathroom breaks, in an unheated interrogation room where, he estimates, the temperature was around 35° F. As injury, plaintiff alleges his teeth chattered so hard he chipped two of them.

The alleged use of force, if it can be called that, is the application of handcuffs and plaintiff's exposure to the

transitory discomfort of the cold[2]. Chipped teeth caused by a police officer's use of force against an arrestee would certainly state a claim, but that is not what plaintiff alleges, because everyone who has experienced cold weather, including children, knows how to prevent chattering teeth. You just open your mouth. Stringing the words together that Snyder and the other troopers' "use of force" "caused" plaintiff's chipped teeth once the factual allegations behind those legal conclusions are set out and even

---

2. Prolonged exposure of a detainee to severe cold can violate the constitution, whether the source of law is the Fourth Amendment or the Eighth Amendment. In addition to the intersecting factors of time and temperature denoted by the terms "prolonged" and "severe," factors such as clothing, weather conditions, and physical condition or illness of the detainee known to the arresting officer also contribute to the decision whether a particular mix is unreasonable. Even location and time of year might matter: the same 35° temperature that is harsh in Philadelphia in October can be the harbinger of Spring in Blair County in April. The fact that every winter weekend thousands of American men physically comparable to plaintiff expose themselves barechested to subfreezing temperatures for hours on end just to show support for their football teams does not mean that the defendants would not be liable if they had done the same to plaintiff. On the other hand, that psychologically speaking the identical conditions are genuinely perceived as more uncomfortable by the person in handcuffs than by the person holding the keys does not factor into the question of constitutionality. Nor does our evolving societal standard of physical comfort make unconstitutionally harsh those conditions that previous generations would have found unremarkable.
  Crediting plaintiff's allegations of fact in full, defendant Snyder handcuffed plaintiff, a normally clothed middle aged man arrested for a felony, by one hand to a chair not secured to the floor, in a room without heat on a Spring day in Hollidaysburg. The air temperature outside was in the thirties and it was about as cold in the room where plaintiff spent, except for bathroom breaks, about ten to twelve hours. That is not treatment which a jury could find to be a violation of the Fourth Amendment.

assuming the truth of everything that plaintiff alleges, fails to state a claim for the excessive use of force[3].

II

Defendants argue in addition that Judge Gibson's findings at the suppression hearing in the related criminal prosecution of the plaintiff preclude any claim. This court can take judicial notice under Fed.R.Evid. 201 of the records of its own proceedings. The relevant transcripts of the suppression hearing are docket no. 101 and docket no. 102 in United States v. Flood, 3:04-cr-36-KRG-1 (W.D.Pa.). Plaintiff was indicted after the seizure of controlled substances by defendants when they executed a state court issued search warrant at plaintiff's residence on April 11, 2004. Plaintiff moved to suppress both the physical evidence seized and statements he made after his arrest. Under federal law (which applies because the suppression hearing was conducted in a federal prosecution) the doctrine of issue preclusion forecloses re-litigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment, if the party against whom the issue preclusion is

---

3. Plaintiff's conclusion is equivalent to claiming that an officer's refusal to get an arrestee a drink caused the arrestee injury by making the arrestee so angry that the arrestee hurt himself by repeatedly banging his head against the wall. In the same sense conveyed by Flood's complaint, the officer's refusal was the cause of the headbanging. Although an officer who injures an arrestee by bouncing his head into a wall acts unreasonably, no reasonable person could find that the officer's actions were the legal cause of the arrestee's injury.

asserted had a full and fair opportunity to litigate the issue in the prior proceeding. See Szehinskyj v. Attorney General, 432 F.3d 253, 255 (3d Cir.2005). Applying Pennsylvania law (which is indistinguishable from federal law in this respect), the Third Circuit held, in James v. Heritage Valley Federal Credit Union, 197 Fed.Appx. 102, 105-06 (3d Cir.2006), cert. denied, 127 S.Ct. 2253 (2007), that findings in prior criminal suppression proceedings estopped a plaintiff from relitigating in a subsequent civil rights claim allegations that the same searches and seizures violated the Fourth Amendment.

In this case, Flood's claim of excessive force was at issue and therefore "actually litigated" in the suppression hearing because Flood's testimony about the allegedly inhumane treatment he received would have tended to show that his statements were involuntary. As a result, the findings of fact on this point made by Judge Gibson at that suppression hearing have issue preclusive force in this subsequent civil rights action. Accord, Ashford v. Skiles, 837 F.Supp. 108, 113 (E.D.Pa.1993), aff'd w/o op., 175 F.3d 1010 (3d Cir.1999). Judge Gibson found that defendant Schaefer did not take part in Flood's custodial questioning, and that except for the short period of time when defendant Snyder left the room, Flood was not handcuffed at all. Judge Gibson found that Flood was offered a drink during his initial interview shortly after noon, and that Flood was allowed to use the bathroom and also given food

some time after the first interview. After a two to three hour hiatus, defendant Snyder and defendant Zimmerman again interviewed Flood. There was a third brief interview two to three hours later. After about ten hours, Flood was arraigned before a Pennsylvania judicial officer: the delay was due to the amount of evidence the troopers had to catalogue and the logistics of locating the appropriate personnel on Easter Sunday. docket no. 149 in United States v. Flood, 3:04-cr-36-KRG-1 (W.D.Pa.) at 31-33, 45. Judge Gibson made no specific findings of fact about the temperature in the interrogation room where Flood claimed the temperature was "freezing," but that is undoubtedly because the only specific testimony at the suppression hearing on the subject was Flood's hyperbole that "it was thirty below," see docket no. 102, Transcript of Suppression Hearing in United States v. Flood, 3:04-cr-36-KRG-1 (W.D.Pa.) at 243, 247, 268, 289. If the temperature had been so unbearable as to influence the voluntariness of plaintiff's statements, Judge Gibson would have had to say so. Judge Gibson found that none of plaintiff's statements should be suppressed. As for the alleged exposure to freezing conditions in the room after the questioning was completed and while Flood was waiting to be taken to arraignment, Judge Gibson found that the delay was due to the amount of evidence the limited number of troopers had to inventory.

III

Plaintiff's complaint as amended alleges that when the defendants executed the search warrant they broke a sliding glass door on the residence he was renting. Neither defendants' motion to dismiss or plaintiff's response really addresses the reasonableness of the search except for plaintiff's repetition of the allegations about the defendants using Brubaker to push narcotics on him. I nonetheless can examine the adequacy of this count under 28 U.S.C.§ 1915(e)(2)(B)(ii).

Plaintiff does not allege he was legally liable for damage to the door or that anyone sought reimbursement from him for the alleged damage. As a renter plaintiff would have no other apparent basis for a claim arising out of that broken door. Plaintiff's complaint as amended alleges that in addition to the controlled substances in the residence, the defendants seized unspecified personal property and destroyed other unspecified property. General allegations of property destruction do not put defendants on notice of what it is that they are alleged to have taken or damaged. The inadequacy may be remedied to state a claim, although four years after the fact plaintiff still has not identified any specific item of property taken or destroyed. But even if plaintiff corrected this defect, plaintiff would not state a federal claim. As in the earlier stages of this case, plaintiff is foreclosed by Heck v. Humphrey from claiming that the search and

seizure by defendants was without probable cause under the Fourth Amendment. Plaintiff is not foreclosed from asserting that the search was unreasonable because property not subject to the search warrant was seized or destroyed, and his complaint as amended may be read as asserting that the defendants seized property which should be or which should have been returned, and that there was negligent or intentional destruction of his property.

But if the defendants were merely negligent, the Due Process Clause (and the constitution generally) "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986)(inmate who alleged that he was injured when he slipped and fell on a pillow negligently left on stairway by a corrections officer stated no federal claim).

If the plaintiff alleges that defendants acted deliberately, Hudson v. Palmer, 468 U.S. 517, 533 (1984), states:

> Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy. (footnote omitted)

Plaintiff clearly had suitable postdeprivation remedies. First, Pennsylvania has in Pa.R.Crim.P. 588 (a parallel provision to Fed.R.Crim.P. 41(g), which plaintiff also could have invoked after the federal adoption of the criminal case) a procedural rule

permitting a prompt hearing in state court for the return of seized property. Second, for seized personal property which is improperly destroyed, Pennsylvania has waived sovereign immunity for tort claims. 42 Pa.C.S.§ 8522(b)(3). Judge Schiller of the United States District Court for the Eastern District of Pennsylvania confronted allegations similar to plaintiff's in <u>Marsh v. Ladd</u>, 2004 WL 2457730, *3 (E.D.Pa.2004), and wrote:

> Defendants were responsible for the care, custody and control of Plaintiff's seized property. Plaintiff alleges that, thirty-seven days after the October 25, 2002 suppression hearing, Defendants negligently ordered the destruction of her property. Accordingly, it was the Defendants' allegedly negligent care and custody of her personal property that directly caused Plaintiff's injury, which was the loss of her personal property. It is difficult for this Court to imagine a scenario better fitted to the statutory language of § 8522(b)(3).

Either one of these remedies standing alone would be an adequate postdeprivation remedy for the seizure of property. If plaintiff ever identifies a specific piece of property he alleges the defendants seized, he might even now move for its return under Rule 41(g). But plaintiff does not state a federal claim against the defendants for seizing property during the search. These claims should be dismissed, and the complaint dismissed.

      Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: December 22, 2009

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

    Kevin P. Flood, Reg. No. 11130-068
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640